UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____

ROBERT MERRITT,                          :
                                         :
            Plaintiff,                   :
                                         :
      v.                                 :       No. 5:14-cv-5528
                                         :
STEVEN GULLO,                            :
                                         :
            Defendant.                   :
_____

### MEMORANDUM AND ORDER

**Defendant's Amended Motion for Summary Judgment, ECF No. 30 – Denied**
**Plaintiff's Motion to Appoint Counsel, ECF No. 44 – Granted in part**

Joseph F. Leeson, Jr.
United States District Judge                                    March 27, 2017

Defendant Steven Gullo has filed an Amended Motion for Summary Judgment concerning Plaintiff Robert Merritt's excessive force claims. Because Gullo has failed to show that Merritt failed to exhaust his administrative remedies and because a genuine issue of material fact exists concerning Merritt's excessive force claim, Gullo's Motion is denied.

**I.     Background**

Merritt has filed a civil rights complaint pursuant to 42 U.S.C. § 1983, alleging that he was assaulted by Northampton County Correctional Officer Steven Gullo during his transport from the Northampton County Prison to the Warren County Correctional Facility on October 17, 2012. Complaint, ECF Nos. 1, 8 (filed on September 24, 2014, and refiled December 8, 2014). Specifically, Merritt claims that Gullo "hit" or "assaulted" him in the back of the head "for no known reason at all" and that Gullo applied handcuffs to Merritt "so tight[ly]" that Merritt could

1

"not feel [his] hands" or wrists. *See id.* at 1-3. Merritt alleges that Gullo's conduct caused him to suffer numbness in his wrists and blurred vision, dizziness, and loss of sleep. *Id.* at 3.

On his complaint form, Merritt identified Northampton County Prison as the facility where was confined at the time of the events giving rise to his claims, and he checked "yes" in response to a question on the form asking whether that facility has a grievance procedure. Compl. 4. In response to a question asking whether the grievance procedure "cover[s] some or all of your claim(s)," Merritt wrote that "Chris Naugle took care of it all."[1] *Id.* In response to a question asking whether Merritt filed a grievance at the facility where his claims arose, Merritt checked "yes." *Id.* He also checked "yes" in response to a question asking if he filed a grievance in any other facility. *Id.* In response to a question on the form asking "where did you file the grievance," Merritt wrote that "grievance officer Chris Naugle took care of all issues." *Id.* In response to a question concerning the result of the grievance, Merritt wrote that he received "no respon[se]." *Id.* Finally, in response to a question asking "[w]hat steps, if any, did you take to appeal that decision," Merritt wrote that he filed a § 1983 claim in federal court. *Id.*

Gullo initially filed a Motion for Summary Judgment on October 15, 2015, contending that (1) Merritt failed to exhaust his administrative remedies; and (2) Merritt's *de minimis* injuries reflect that Gullo did not use excessive force. *See* ECF Nos. 24-25. In a Memorandum and Order entered February 12, 2016, the Court addressed Gullo's failure-to-exhaust argument and determined that Gullo's statement that he was "not aware" of Merritt having filed a grievance against him was insufficient to meet Gullo's burden of showing that Merritt had failed to exhaust administrative remedies, and that in the absence of affidavits from the Northampton

---

[1] Christopher Naugle is a Northampton County detective who interviewed Merritt at the Warren County facility as part of a Northampton County Department of Corrections investigation into the encounter between Gullo and Merritt. *See* Def.'s Mem. Supp. Mot. 11, ECF No. 30-7.

County and Warren County facilities confirming that Merritt did not follow proper procedures, Gullo could not carry his burden. ECF No. 27. The Court denied Gullo's Motion without prejudice.[2] Gullo subsequently filed the present Amended Motion for Summary Judgment, again on the grounds that Merritt failed to exhaust his administrative remedies and that his *de minimis* injuries show that Gullo did not apply excessive force.

## II.     Legal Standard – Summary Judgment

Summary judgment is appropriate if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law," and a dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When the evidence favoring the nonmoving party is "merely colorable" or "not significantly probative, summary judgment may be granted." *Id.* at 249-50 (citations omitted). The parties must support their respective contentions—that a fact cannot be or is genuinely disputed—by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c)(1). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

## III.    Analysis

### A.     Gullo has not shown that Merritt failed to exhaust his administrative remedies.

Gullo contends that Merritt's lawsuit is barred by the Prison Litigation Reform Act ("PLRA") because Merritt failed to exhaust his administrative remedies.

---

[2]    The Court deferred ruling on the second argument offered by Gullo, concerning the *de minimis* nature of Merritt's injuries.

> In pertinent part, the PLRA provides:
>
> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

Under the PLRA, exhaustion of administrative remedies is required for all actions concerning prison conditions brought under federal law. *See* 42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81 (2006). The "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). The PLRA also mandates that inmates "properly" exhaust administrative remedies before filing suit in federal court. *Woodford*, 548 U.S. at 93. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 92. Failure to substantially comply with procedural requirements of the applicable prison's grievance system will result in a procedural default of the claim. *Spruill v. Gillis*, 372 F.3d 218, 227-32 (3d Cir. 2004). However, "[t]he PLRA does not require exhaustion of all remedies. Rather, it requires exhaustion of such administrative remedies 'as are available.'" *Brown v. Croak*, 312 F.3d 109, 110 (3d Cir. 2002).[3] Under the PLRA, "defendants must plead and prove failure to exhaust as an affirmative defense." *Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002).

---

[3]   "The Third Circuit has firmly established that the availability of administrative remedies is a question of law for the Court, even if it necessitates resolution of disputed facts." *Hontz v. Berks Cty. Prison*, No. 12-CV-2663, 2014 WL 1123376, at *7 (E.D. Pa. Mar. 21, 2014) (citing *Small v. Camden County*, 728 F.3d 265, 269 (3d Cir. 2013)).

"Because it is an affirmative defense, the burden of proving failure to exhaust rests with the defendant." *In re Bayside Prison Litig.*, 351 F. App'x 679, 681 (3d Cir. 2009).

Gullo contends that Merritt failed to pursue and exhaust the grievance remedies available to him under the Northampton County Prison grievance policy. The grievance policy is set forth in Northampton County's Inmate Handbook and provides as follows:

> The Northampton County Department of Corrections allows an inmate to file a grievance to resolve a disputable matter while in our custody. Inmates are to complete a grievance slip (NCP Form No. NCP-167) from the housing unit officer. You are to list your concerns along with a possible resolution. Your grievance will be answered in a timely manner, with a written response to you from the Grievance Supervisor. You may appeal the Grievance Supervisor's decision to the Deputy Warden of Classification or their designee using Form No. NCP-169. See the complete GRS protocols listed on your housing unit for additional procedures of appeal.

Def.'s Mot. Ex. C, ECF No. 30-4. Gullo contends that this procedure remained available to Merritt even after Merritt was transferred to Warren County, but Merritt failed to avail himself of it. For support, Gullo offers an affidavit from Northampton County Prison Warden Todd Buskirk, who states that he reviewed Merritt's inmate file and determined that "[a]lthough Merritt spoke to [Northampton County] investigator, Chris Naugle, about his claim against Officer Gullo, Merritt did not use the grievance procedure outlined in the inmate handbook." Def.'s Mot. Ex. E. ¶ 4, ECF No. 30-6. Further, Buskirk states that "[h]ad Merritt filed a grievance, we would have reviewed it and responded to it pursuant to the grievance procedure outlined in the inmate handbook." *Id.* ¶ 5.

In response to Gullo's Motion, Merritt has submitted to the Court a copy of a Northampton County Department of Corrections "Complaint Affidavit" form (NCP Form No. NCP-175) signed by Merritt and dated October 26, 2012, containing Merritt's complaint about

Gullo's alleged assault against him. Pl.'s Resp. 3, ECF No. 44. Merritt states that this form "is the complaint that Chris Naugle the investigator reported from me." *Id.* at 2.

Merritt's alleged submission of the Complaint Affidavit form to Detective Naugle did not properly exhaust the administrative remedies specified in the Northampton County Inmate Handbook. *See Drain v. McLeod*, No. CIV.A.04-1589, 2007 WL 172349, at *6 (E.D. Pa. Jan. 19, 2007) (finding that "an internal investigation does not constitute an administrative remedy that is available in addition to, or in lieu of, a prison's administrative grievance procedure"). Nevertheless, there remains the question of whether the Northampton County grievance remedies remained "available" to Merritt following his transfer to Warren County.

The fact that a prisoner is transferred from one correctional facility to another does not necessarily excuse the PLRA's exhaustion requirement or render administrative remedies "unavailable" to the prisoner. *See Hontz*, 2014 WL 1123376, at *7. In *Hontz*, an inmate claimed that the Berks County prison's administrative remedies were unavailable to him following his transfer from the prison. The prison argued otherwise and submitted an affidavit from its warden affirming that "an inmate's right to submit a grievance and/or appeal of a grievance decision is not terminated when an inmate is transferred out of [the prison]" and that the prison had, in the past, received grievances from inmates after they had been discharged or transferred. *Id.* In response, the inmate contended that the prison had "provided no information regarding how and by what process inmates transferred out of [the prison] may submit grievances" and that the prison handbook, "the sole source of information regarding grievances, contains no information on the post-transfer grievance process." *Id.* The court acknowledged that the inmate's arguments on this matter were "logical," but found that these arguments did "not undercut the [warden's] assertion that [transferred or discharged] inmates have submitted grievances, thus making the

6

remedies 'capable of use.'" *Id.* at *7 n.5. The court therefore found that the prison's remedies remained "available" to the inmate following his transfer, but added that had the inmate been able to show "that he had pursued any sort of administrative remedy upon learning that his civil rights may have been violated—for example, by submitting a grievance using [his new facility's] administrative system, asking a corrections officer at [his new facility] for information on how to proceed, or attempting to mail a grievance or complaint to Berks County Prison—the issue of exhaustion might be a closer question." *Id.* at *8.

Here, Gullo has not provided any evidence to show that either (1) Merritt could have obtained and submitted a grievance form following his transfer, or (2) Northampton County Prison had, in the past, received grievances from transferred or discharged inmates. With respect to the first option, although Warden Buskirk's affidavit asserts that "[h]ad Merritt filed a grievance, we would have reviewed it and responded to it pursuant to the grievance procedure outlined in the inmate handbook," Gullo has provided no information as to how Merritt could have obtained and submitted a grievance form following his transfer.[4] Nor has Gullo provided evidence to show that other transferred or discharged inmates have availed themselves of Northampton County's remedies. Finally, Gullo has not shown that Merritt failed to pursue remedies at his new facility in Warren County.

For these reasons, the Court finds that Gullo has failed to carry his burden of showing that Merritt failed to exhaust his administrative remedies.

---

[4] The Inmate Handbook, which states that inmates "are to complete a grievance slip (NCP Form No. NCP-167) from the housing unit officer," does not appear to include any information concerning how transferred inmates can obtain or submit the form.

**B.     There is a genuine issue of material fact concerning Merritt's excessive force claims.**

In addition to his contention concerning the exhaustion of remedies, Gullo also argues that he is entitled to summary judgment on Merritt's claims because Merritt's *de minimis* injuries reflect that Gullo did not use excessive force.

The Supreme Court has interpreted the Eighth Amendment's prohibition of the infliction of "cruel and unusual punishments" to bar prison officials from using excessive force against inmates. *See Hudson v. McMillian*, 503 U.S. 1, 6–7 (1992). "In an excessive force claim, the central question is 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000) (quoting *Hudson*, 503 U.S. at 7). But not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson*, 503 U.S. at 9. "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Id.* at 9-10 (quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986)). In determining whether a correctional officer has used excessive force in violation of the Eighth Amendment, courts look to several factors including:

> (1) "the need for the application of force"; (2) "the relationship between the need and the amount of force that was used"; (3) "the extent of injury inflicted"; (4) "the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them"; and (5) "any efforts made to temper the severity of a forceful response."

*Brooks*, 204 F.3d at 106 (quoting *Whitley*, 475 U.S. at 321). "Summary judgment in favor of a defendant is not appropriate if 'it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain.'" *Id.* (quoting *Whitley*, 475 U.S. at 327).

As set forth above, Merritt alleges that Gullo "hit" or "assaulted" him in the back of the head "for no known reason at all" and applied handcuffs too tightly, and that this conduct caused him to suffer numbness in his wrists, blurred vision, dizziness, and loss of sleep.[5] Gullo disputes these allegations. First, with respect to the handcuffs, Gullo states that "Merritt was not shackled or handcuffed at the time [he] delivered him into the custody of [the Warren County] officers." Gullo Aff. ¶ 4, ECF No. 30-2. For support, Gullo has submitted a photograph of Merritt "just prior to the [Warren County] officers taking custody of him," in which Merritt appears to be unshackled as he walks through a doorway. *Id.* ¶ 5. According to Gullo, the Warren County officials placed their own handcuffs on Merritt after he was transferred to them, and thus "[a]ny injuries Merritt claims to have sustained because the handcuffs were placed too tightly on him were not caused by [Gullo]." *Id.* ¶¶ 6-7. With respect to Merritt's allegation that Gullo hit him in the back of the head for no reason, Gullo states that "[d]uring the course of transferring Merritt . . . . Merritt threatened [him] and [he] took control of Merritt by forcing him to the ground. However, during the course of that action, Merritt was not injured and [Gullo] did not apply any force greater than that which was necessary to place him under control." *Id.* ¶ 8. Gullo states that he "did not intend to hurt Merritt and only acted to get him under control after he threatened me." *Id.* ¶ 14. Finally, with respect to Merritt's alleged injuries, Gullo has submitted notes from the Warren County prison medical department showing that on the day of the incident Merritt "denie[d] medical . . . issues" and that a week after the incident, although Merritt reported to

---

[5] The Court considers Merritt's Complaint as an affidavit. *See, e.g., Holland v. Ward*, No. CIV. A. 97-3923, 1999 WL 1240947, at *5 (E.D. Pa. Dec. 21, 1999) ("[T]he Court may construe a pro se plaintiff's pleadings as affidavits for purposes of summary judgment motions."). In addition, as noted above, in response to Gullo's Amended Motion for Summary Judgment, Merritt submitted a Northampton County Department of Corrections Complaint Affidavit form, signed under penalty of Pennsylvania's false swearing statute, containing the substance of his allegations against Gullo. *See* Pl.'s Resp. 3, ECF No. 44.

medical personnel that he had been assaulted by Northampton County officers, the medical personnel found "no injuries" and "no abnormality." *See* Def.'s Mot. Ex. B, ECF No. 30-3. The medical notes also show, however, that two weeks after the incident Merritt complained of double vision and numbness in his wrists. *Id.* He was offered Motrin for his wrists and was referred to a doctor for his complaints of double vision, but no further information is available in the record indicating the results of this referral. *Id.*

Gullo contends that "[u]nless and until Merritt produces some form of proof to reflect that he suffered anything more than a de minimis injury, it would be appropriate for the court to decide that Officer Gullo did not use excessive force." Def.'s Br. Supp. Mot. 14, ECF No. 30-7. As Gullo acknowledges, however, the extent of injury inflicted is "not dispostive," *id.* at 13, and is only one of the factors a court must consider in assessing an excessive force claim. In this respect, as Gullo again acknowledges, the Supreme Court has held "[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." *Id.* (quoting *Brooks*, 204 F.3d at 108); *see also Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010) (per curiam) ("Injury and force . . . are only imperfectly correlated, and it is the latter that ultimately counts. An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury."). Moreover, although Merritt has not provided evidence of injury beyond his own, subjective complaints, a reasonable jury could believe his account that he suffered dizziness, lack of sleep, blurred vision, and numbness in his wrists as a result of the alleged incident, complaints that are reflected in the medical notes from Warren

County prison recorded two weeks after the incident. *See Bond v. Rhodes*, No. 2:06CV1515, 2009 WL 2413739, at *5 (W.D. Pa. July 31, 2009) ("Plaintiff has provided evidence in the nature of his own statements which, if believed, would establish that he did suffer injury and that he experienced significant pain as a result of this incident.").

With respect to the other factors that courts consider in assessing an excessive force claim, it appears that the evidence, viewed in the light most favorable to Merritt, would support an inference of wantonness in the infliction of pain. According to Merritt's account, Gullo struck him in the head "for no known reason at all" and applied handcuffs so tightly that his wrists became numb. Gullo disputes this account, stating that did not apply handcuffs to Merritt, that he "took control" of Merritt after Merritt threatened him, and that he did not apply unnecessary force. But a reasonable jury could find Merritt's testimony to be credible and, based on this testimony, find that the Gullo's conduct violated Merritt's Eighth Amendment rights. *Durham v. Vekios*, No. CIV.A. 09-5376-FLW, 2010 WL 5479633, at *1 (D.N.J. Dec. 22, 2010) (finding that inmate's allegation that correctional officer "punched [him] on the side of his head with his fist" for no reason was "sufficient on its own to state a claim for excessive use of force in violation of the Eighth Amendment").[6] Accordingly, because there exists a genuine dispute of material fact with respect to Merritt's excessive force claim, Gullo's motion is denied.

---

[6] In some contexts, courts have found that a single blow does not constitute excessive force in violation of the Eighth Amendment. *See, e.g., Reyes v. Chinnici*, 54 F. App'x 44, 47 (3d Cir. 2002) (affirming district court's finding that a corrections officer's punch to an inmate's right shoulder did not constitute excessive force when the inmate was a "security status" inmate; the inmate admitted to attempting to spit on the officer; the officer's blow was "not in the head or face"; the purpose of the officer's reaction was to avoid being spit on; and the resulting injury was a minor swelling of the shoulder that lasted only a few days). In contrast to *Reyes*, however, there is evidence in the record from which a reasonable jury could conclude that Gullo struck Merritt in the head (rather than the shoulder), for no reason (rather than to avoid being spit on), causing dizziness, blurred vision, sleeplessness, and numbness in the wrists, some of which symptoms may have persisted for weeks (rather than minor swelling lasting only a few days).

**C.    Merritt's Motion for Appointment of Counsel is granted in part.**

Merritt's Motion for Appointment of Counsel is granted in part, such that the Clerk of Court will be directed to refer this matter to the Prisoner Civil Rights Panel to attempt to obtain counsel for Merritt.[7] The Court will stay this matter during the time that Merritt's request for counsel is pending before the Prisoner Civil Rights Panel.

**IV.    Order**

Accordingly, this 27th day of March, 2017, it is **ORDERED** that:

1. Defendant's Amended Motion for Summary Judgment, ECF No. 30, is **DENIED**;

2. Plaintiff's Motion for Appointment of Counsel, ECF No. 44, is **GRANTED in part;**

3. This case is **STAYED** during the time that Merritt's request for counsel is pending before the Prisoner Civil Rights Panel.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*_____
JOSEPH F. LEESON, JR.
United States District Judge

---

Because the Court finds that Merritt's account of the alleged blow to his head is sufficient to create a genuine issue of material fact on his excessive force claim, the Court need not decide whether Merritt's account of the alleged application of the handcuffs, standing alone, would be sufficient to survive Gullo's motion for summary judgment.

[7]    The Court is referring this action to this district's Prisoner Civil Rights Panel to attempt to find a volunteer attorney willing to represent Merritt. However, the Court cannot compel an attorney to represent him, and there is no guarantee that an attorney will agree to accept his case. Accordingly, Merritt will have to wait to see if an attorney on the Panel is willing to accept his case.